IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ELISHA R. P.,[1] <br><br>**Plaintiff,** <br><br> v. <br><br> **COMISSIONER of SOCIAL SECURITY,** <br><br> **Defendant.** | Case No. 22-CV-01882-SPM |

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff, represented by counsel, seeks judicial review of the final agency decision denying her application for a period of disability and Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for disability insurance on June 1, 2020 alleging disability beginning March 1, 2020. (Tr. 200.) After holding an evidentiary hearing, the Administrative Law Judge (ALJ) denied the application. (Tr. 15-33.) The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1.) Administrative remedies have been exhausted and a timely complaint was filed in this Court.

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

## ISSUES RAISED BY PLAINTIFF

Plaintiff raises the following point: The ALJ erred in failing to identify the evidentiary basis of his assessment of Plaintiff's residual functional capacity (RFC).

## APPLICABLE LEGAL STANDARDS

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the plaintiff is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps 1–4. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is

important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### THE DECISION OF THE ALJ

The ALJ followed the five-step analytical framework described above. He determined that Plaintiff had not worked at the level of substantial gainful activity since the alleged onset date. (Tr. 17.) The ALJ found that Plaintiff had severe impairments of obesity, bilateral carpal tunnel syndrome, anxiety disorder, depressive disorder, bipolar disorder, major depressive disorder, posttraumatic stress disorder, borderline personality traits by history, mild asthma, status post left ankle

trimalleolar fracture requiring open reduction internal fixation with residual posttraumatic osteoarthritis, migraine headaches, and sciatica. (Tr. 17-18). He also found that Plaintiff did not meet a listing. (Tr. 18).

The ALJ determined Plaintiff had the RFC to perform sedentary work, but said, in relevant part, that she should avoid concentrated exposure to loud noise, vibration, fumes, dusts, odors, gases, areas of poor ventilation, and dangerous workplace hazards such as moving machinery and unprotected heights. (Tr. 21). He also limited her to "work in an environment with a moderate noise intensity level of quieter as defined within the Selected Characteristics of Occupations (SCO), examples of which include light traffic, a grocery store or a department store." (*Id.*). He also stated that she should avoid working in direct sunlight, extraordinary bright light, or flashing lights but could work in normal office lighting settings. (*Id.*).

In drawing his conclusion, the ALJ pointed to several parts of Plaintiff's medical records showing that the medical evidence of record was not supportive of her allegations of disabling symptomatology. The ALJ stated that Plaintiff "does have treatment with neurology for headaches, but the severity of headaches seem to be transient with some improvement with Topamax, Ibuprofen, and no evidence of the severity, frequency or intensity of headaches to preclude work." (Tr. 29.) He also noted that Plaintiff continued to work "several days a week," her employer did not indicate an issue with headaches, and that she "testified that her medications were somewhat effective and reduced her pain at level 4." (*Id.*). He further stated that "[t]here is no evidence of any injections by neurology." (*Id.*).

## THE EVIDENTIARY RECORD

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The Court will, however, note some key findings.

### I. Agency Records

Plaintiff was born on April 20, 1987 and has a tenth grade education. (Tr. 229, 233). In her function report, Plaintiff stated that "I have headaches every day because my anxiety gets so bad and I feel like I'm being attacked." (Tr. 329).

### II. Medical Records

Plaintiff received treatment for migraine headaches in June 2020. (Tr. at 392). She reported migraine symptoms for the prior eight days. She claimed that over-the-counter medication did not provide any relief. Dr. Gemo Wong diagnosed Palmeros-Vera with migraines and prescribed Topamax. (Tr. at 394).

In August 2020, Plaintiff met with her primary care provider, to follow up on treatment for migraines and anxiety. (Tr. at 453). She reported that Topamax had reduced the frequency of her migraines to two to three times a week. (Tr. at 453). However, one month later, Plaintiff returned to her primary care provider and reported worsening migraines. (Tr. at 458). Consequently, her provider increased her dosage of Topamax. (Tr. at 460).

Plaintiff returned to her primary care provider in April 2021 and reported suffering at least 12 to 15 headaches a month. (Tr. at 529). Her provider increased her dosage of Topamax for the second time and referred her to a neurologist. (Tr. at 532). Plaintiff met with the neurologist later in April 2021. (Tr. at 539). She reported

14 to 16 migraines a month that were unresponsive to Topamax. (Tr. at 539). She described symptoms of nausea, photophobia, phonophobia, and pain in the front of her head. (Tr. at 539). The neurologist diagnosed Plaintiff with migraines without aura and medication overuse headaches. (Tr. at 542). The neurologist discontinued Topamax and prescribed gabapentin, sumatriptan, and Phenergan. (Tr. at 542).

Plaintiff followed-up with her neurologist in June 2021. (Tr. at 733). Despite the change in her medication, she reported daily headaches and 14 to 16 migraines a month. (Tr. at 733). The neurologist noted that Plaintiff had no improvement with Topamax or gabapentin. (Tr. at 737). As a result, he prescribed propranolol and Relpax. He also recommended she undergo a brain MRI to rule out a structural cause to her migraines. (Tr. at 737). The MRI did not find any structural abnormalities. (Tr. at 748).

In August 2021, Plaintiff returned to her neurologist and reported ongoing daily headaches and 14 to 16 migraines a month. (Tr. at 755). The neurologist noted Plaintiff's migraines were unresponsive to Topamax, propranolol, and gabapentin. (Tr. at 759). This time, he prescribed Nurtec and naratriptan. (Tr. at 759).

### III. State Agency RFC Assessments

In August 2020, state agency physician Dr. Frank Mikeil assessed Plaintiff's physical RFC. (Tr. 86-88). Another state agency consultant, Dr. Howard Tin, assessed Plaintiff's mental RFC and stated that Plaintiff had difficulty carrying out detailed instructions and maintaining attention and concentration for extended periods of time. He also said that Plaintiff had "a medically determinable impairment that is more than non-severe and requires further analysis and determination on the

MRFC." (Tr. 84). The RFC determination concluded that Plaintiff was not disabled and could perform light work.

In July 2021, state agency physician Dr. Charles Kenney also assessed Plaintiff's physical RFC. (Tr. 98-100). In terms of mental RFC, Dr. Melanie Nichols saw a moderate limitation in concentration, persistence, and pace, but also stated that further analysis and determination was needed. (Tr. 96-97). The RFC determination found that Plaintiff was not disabled and could perform light work. (Tr. 102).

## ANALYSIS

Plaintiff claimed she suffers from migraines that prevent her from being able to perform even sedentary work.

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. However, the scope is limited and review is deferential. Administrative error may be harmless and the Court will not remand a case to the ALJ for further specification where it is convinced that the ALJ will reach the same result. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010).

Because of the ALJ's lackluster treatment of Plaintiff's migraines in terms of RFC, there are errors in the ALJ's opinion which may change the result. The ALJ used Plaintiff's deficits, including non-exertional impairments, which are indeed serious, to come to a determination from his RFC that Plaintiff was limited to sedentary work.

In the world of disability claims, migraines are a challenging impairment. Objective verification can be difficult in these cases. *See Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014); *see also* SSR 19-4p, § 2. Thus, determining the nature and extent of a claimant's impairment rests heavily on an assessment of the claimant's subjective symptoms, including how her symptoms respond to treatment. *See Overton v. Saul*, 802 F. App'x 190, 192 (7th Cir. 2020). Migraines are also variable. At times, a claimant suffering from migraines may be symptom-free and unimpaired for some time, but if a claimant suffers migraines that are severe enough to force her to miss work, just two migraines a month could be disabling. (Tr. 78). For this reason, the ALJ usually should include the likelihood of missing work when determining the RFC of a claimant who suffers from migraines. *See Moore v. Colvin*, 743 F.3d 1118, 1126-1127 (7th Cir. 2014). The ALJ failed to do so here.

The ALJ's migraine related limitations in his RFC determination were also bewildering. He limited her to work in a quiet environment and then listed examples as a grocery store or a department store. He then stated that she should avoid working in bright light, but grocery stores, department stores, and even some offices have bright light. These limitations drastically limit Plaintiff's employment options.

Furthermore, the ALJ's reasoning for his treatment of Plaintiff's migraines presents issues. When an ALJ accepts that a claimant's migraines are a severe impairment but concludes that she is not disabled, there are usually two possible explanations. Either the ALJ found that claimant's migraines did not occur at a disabling frequency, or the severity of migraines were not disabling and the claimant could work while suffering a migraine. The ALJ here stated:

>after careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 23). With respect to Plaintiff's migraines, the ALJ concluded that the Plaintiff's functioning was not markedly limited due to control of her migraines from medication. (Tr. 29). He stated that "the claimant testified that her medications were somewhat effective and reduced her pain at level 4." (*Id.*). He opined that the claim that Plaintiff would miss four days of work a month was not persuasive. (Tr. 30). He said that "there are no findings in primary care, counseling, psychiatric medication visits, or neurology visits to support any findings that the claimant was this limited." (*Id.*). Conversely, Plaintiff described having 16 migraines a month through two rounds of medication changes from a neurologist. The ALJ misconstrued, misstated, and selectively ignored information that did not bolster his findings. As a result, the ALJ's reasoning is insufficient to support his conclusion that Plaintiff's migraine symptoms are not as severe as she alleged when compared with the record and his RFC determination is lacking in limitations as a result.

This Memorandum and Order should not be construed as an indication that the Court believes that Plaintiff was disabled during the relevant period, or that she should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## CONCLUSION

The Commissioner's final decision denying Plaintiff's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g). The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff.

**IT IS SO ORDERED.**

**DATED:  August 3, 2023**

<u>s/ *Stephen P. McGlynn*</u>
**STEPHEN P. McGLYNN**
**U.S. District Judge**
